UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| GLADYS BECQUER, et al.,<br>    Plaintiffs,<br><br> v.<br><br><br>LUIS FALCON,<br>    Defendant. | Civ. Action No. 05-4660 (KSH)<br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. INTRODUCTION**

Plaintiffs Gladys Becquer ("Becquer") and Ernestina Moracen ("Moracen") are the sister and stepdaughter of the late Cecilia Cruz ("Cruz"). When Cruz died on July 16, 2003, the two plaintiffs became the designated beneficiaries of an annuity she had purchased in 2001 from Travelers Life and Annuity ("Travelers"). Pedro Knight ("Knight"), Cruz's husband, jointly owned the annuity, but there was no co-annuitant. Defendant Luis Falcon ("Falcon") was the executor of Cruz's estate before he was removed as a result of the circumstances surrounding this litigation.

On August 4, 2003, Falcon and the plaintiffs went to a Citibank branch where, in the presence of a Citibank Officer, the plaintiffs signed an annuity claim. Travelers issued four checks, representing the value of the annuity, payable to each plaintiff separately as follows: two checks payable to Becquer for $361,232.71 and $54,033.43, and two checks payable to Moracen for $361,043.60 and $54,005.15. The four checks were deposited into

1

a Citibank account bearing both their names. The following month, Moracen, at the behest of Falcon, executed two checks in the amount of $415,000.00 each payable to her father Pedro Knight. Those two checks were then deposited into a Banco Popular account bearing the name of Pedro Knight or Luis Falcon.

The plaintiffs allege that Falcon and Knight, who himself was a defendant in this action until his death in 2005, orchestrated the transfers to defraud them of the proceeds from the annuity. The record demonstrates that Falcon was ultimately successful in securing the proceeds. What remains to be decided by this Court is whether the record supports granting summary judgment in favor of Moracen and Becquer on their fraud and conversion claims. Falcon has largely ignored this litigation, and did not file opposition. To date, he has not complied with the court order to submit to an accounting with inventory and appraisal of assets. Falcon also did not participate in the preparation of the pretrial order that was scheduled for his convenience in California, and he has not provided the Court or his adversaries with his current location and address.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) authorizes a court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is on the party seeking summary judgment to prove that there are no genuine disputes of material fact. McCarthy v. Recordex Service, Inc., 80 F.3d 842, 847 (3d Cir. 1996). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Albeit Falcon has not opposed the plaintiffs' motion, an

unopposed summary judgment motion does not necessarily entitle the moving party to judgment in its favor.  Rule 56(e) provides that "[i]f the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  The Third Circuit has explained that a District Court "must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law."  Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

### III. DISCUSSION

Plaintiffs move for summary judgment on their conversion and fraud claims.  Because the Court here exercises diversity jurisdiction, New Jersey state law controls.  Under New Jersey law, "common-law legal fraud consists of five elements: material misrepresentation of a presently existing or past fact; knowledge or belief by the defendant of its falsity; an intention that the other person rely on it; reasonable reliance thereon by the other person; and resulting damage."  Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 551 (App.Div. 1996) (internal citations omitted).  A conversion occurs where "there [is] some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel."  Farrow v. Ocean County Trust Co., 121 N.J.L. 344, 348 (Sup. Ct. 1938) (internal quotation marks and citations omitted).  Both claims, if successful, impose liability for compensatory and punitive damages.  Winkler v. Hartford Acci. & Indem. Co., 66 N.J. Super. 22, 27-29 (App.Div. 1961); Baron v. Peoples Nat'l Bank, 16 N.J. Super. 243, 246 (County Ct. 1951).  The Court concludes that summary judgment is appropriate here because the record, particularly the paper trail left by the transfers and the reasonable inferences drawn from those documents, demonstrates that

Falcon obtained the annuity proceeds by fraudulent means, thereby depriving the plaintiffs of their rightful property.

After Cruz died on July 16, 2003, Falcon was named an executor of the estate and gained considerable knowledge of the assets comprising the estate. Becquer contends that Falcon contacted her by telephone after Cruz's death. (Becquer Aff. 3.) He then took both Becquer and Moracen to a Citibank branch on August 4, 2003, where, in the presence of a Citibank Officer, both women signed a letter and an annuity claim form. (Becquer Aff. 3.) Travelers issued the four annuity checks during August of 2003, all of which were deposited into a joint account titled in the names of the plaintiffs. (Exs. P3, P4, P5, P6, and P7 to Pls.' Mot. Summ. J.)

The checks issued to Becquer were endorsed with her signature, while the checks issued to Moracen were endorsed "for deposit only." (Exs. P3, P4, P5, and P6 to Pls.' Mot. Summ. J.) Moracen asserts that the checks lacked her endorsement because she was completely unaware that the joint account had been opened and that the annuity checks had been issued and deposited until she received a bank statement reflecting the transactions in September of 2007. (Moracen Aff. 4-7.) She explains that although she had indeed signed documents, including the claim forms, at the Citibank branch on August 4 and wrote the two $415,000 checks that were deposited into the Banco Popular account, she was only following Falcon's directions and did not understand what she was signing. (Moracen Aff. 7.)

The reasonable inferences to be drawn from the various documents effectuating the delivery of the annuity proceeds into Falcon's account support Moracen's contentions. There is a clear paper trail leading from the issuance of the annuity claim checks to Falcon's

bank account, and Moracen had no reason to literally give away the $415,000 left to her by her late stepmother. Falcon, who directed these transfers into his Banco Popular account, exercised dominion over the annuity proceeds in a manner inconsistent with Moracen's right to the $415,000. He unlawfully converted the annuity proceeds rightfully belonging to her and is liable to her for the amount of the converted property.

Becquer also had no reason to transfer the $415,000 left to her by her late sister aside from following Falcon's directions that she do so. Becquer contends that Falcon convinced her to sign over the annuity proceeds by telling her that the monies were tied up in litigation, that the annuity proceeds legally belonged to Knight, and that she would receive the proceeds upon Knight's death. (Becquer Aff. 4.) In fact there was no pending litigation with respect to the annuity at that time and the proceeds rightfully belonged to Moracen and Becquer as the designated beneficiaries. (Moracen Aff. 13; Becquer Aff. 14.) These record facts satisfy the elements of common law fraud: Falcon made misrepresentations concerning the plaintiffs' rights to the annuity intending that Becquer would rely on them, which she reasonably did, resulting in the loss of the annuity proceeds.

The Court concludes that plaintiffs' contentions are supported by record evidence, and they are entitled to summary judgment in their favor as to compensatory damages.

## IV. PUNITIVE DAMAGES

Based on this record, judgment is granted with respect to compensatory damages because the amount of money Falcon took from these plaintiffs is readily ascertainable. As to plaintiffs' request for punitive damages, the Court concludes that the somewhat unique circumstances of this matter, specifically Falcon's being largely absent from the litigation, preclude granting punitive damages by way of an unopposed summary judgment motion

5

without providing some opportunity for Falcon's participation and for further inquiry. N.J.S.A. § 2A:15-5.12 authorizes an award of punitive damages where "the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions."  In <u>Lamorte Burns & Co. v. Walters</u>, 167 N.J. 285, 290 (N.J. 2001), the New Jersey Supreme Court made clear that punitive damages may be granted at summary judgment when supported by a record that meets the "clear and convincing evidence" standard under N.J.S.A. § 2A:15-5.12.  The <u>Walters</u> court affirmed the trial court's award of punitive damages after concluding that it had relied on a sufficiently developed record.

      This matter should follow a similar path.  Participation by Falcon may provide a more developed record, and for that purpose the Court will issue an order to show cause providing him an opportunity to be heard on why punitive damages should not be entered. It does not need saying that in the face of his continued absence, the Court will rely on the facts at hand, construing them in favor of the plaintiffs, and enter an appropriate award.

      An appropriate order accompanies this opinion granting plaintiffs' summary judgment, awarding compensatory damages, and setting forth the terms of the order to show cause on the punitive damage claim.

/s/Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

6